UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x
                                                               :
AMERICAS BULK TRANSPORT LTD.,                                  :
                                                               :   **ORDER AND OPINION**
                                       Plaintiff,              :   **DENYING AND GRANTING**
                                                               :   **MOTIONS TO VACATE**
            -against-                                          :   **ATTACHMENTS**
                                                               :
IMT a/k/a IMT DUSSELDORT a/k/a IMT                             :   08 Civ. 6970 (AKH)
SHIPPING & CHARTERING GmbH a/k/a INTER-                        :
MARITIME TRANSPORTATION GmbH a/k/a                             :
INTER-MARITIME TRANSPORTATION, LTD.,                           :
                                                               :
                                       Defendant.              :
                                                               :
-------------------------------------------------------------- x


-------------------------------------------------------------- x
                                                               :
EITZEN BULK A/S,                                               :
                                                               :
                                                               :
                                       Plaintiff,              :   08 Civ. 8319 (AKH)
                                                               :
            -against-                                          :
                                                               :
ASHAPURA MINECHEM LTD., et al.,                                :
                                                               :
                                       Defendants.             :
                                                               :
-------------------------------------------------------------- x
ALVIN K. HELLERSTEIN, U.S.D.J.:

       Must a garnished bank account, and the funds within that account and within the jurisdiction of the district court, be returned to a party claiming ownership of the garnished funds, regardless of the equities between the party claiming ownership and the party's creditor, if the district court originally lacked jurisdiction to authorize the garnishment?

       In Shipping Corp. of India v. Jaldhi, the court of appeals ruled that district courts lack jurisdiction to order attachments of dollar-denominated payments, transmitted by a bank in

1

one nation outside the United States to a payee's account in a bank in some other nation outside the United States, but passing through a bank located in this district for clearance.  585 F.3d 58, 61 (2d Cir. 2009).  The court of appeals held that under New York law, the flow of funds did not present an incident of property that could be attached.  Id. at 70-71 (citing N.Y. U.C.C. § 4-A-502 & cmt.4; § 4-A-503).  In doing so, the court of appeals reversed its earlier decision that authorized such orders of attachment.  Winter Storm Shipping, Ltd. v. Thai Petrochemical Industry Public Co. Ltd., 310 F.3d 263, 278 (2d Cir. 2002).  In a later case, Hawknet Ltd. v. Overseas Shipping Agencies, the court of appeals held that the rule announced in Shipping Corp. of India applied to all cases still open on direct review.  590 F.3d 87, 91 (2d Cir. 2009).

Based on Shipping Corp. of India, two debtors moved to vacate orders of attachment issued by this Court, and to regain funds held by the clearing banks in suspense accounts subject to the orders of this Court.  Arbitration in London is pending in the first case.  The second case involves a judgment confirming an arbitral award, and that later became the object of an interpleader action involving other creditors.

## I.    THE CASES AT BAR

### A.  Americas Bulk Transport Ltd. v. IMT

Plaintiff Americas Bulk Transport Ltd. chartered the M/V Engin Kaptanoglu to Defendant IMT and sued IMT for failing to return the vessel within the period provided by the charter agreement.  Americas Bulk claimed damages, inclusive of interest and costs, totaling $3,138,130.34, filed a lawsuit in this Court, and sought an order for attachment in aid of arbitration in London.  The order was issued and executed on Wachovia Bank, a federal reserve clearing bank with offices in New York.  Wachovia Bank reported that $650,034.45 was caught, in the form of an electronic fund transfer ("EFT") originated by IMT and intended for a third

party and transmitted to Wachovia for clearance, and that the funds would be held by it in its "General Ledger Account" subject to further orders of the Court.

The Order for Attachment was conditioned on periodic reports to the Court concerning progress in the arbitration proceedings. 9 U.S.C. § 8. As Americas Bulk has reported, IMT initiated the arbitration proceedings shortly after the EFTs were attached, written statements of claims and defenses have been exchanged, and discovery proceedings are underway.

Following Shipping Corp. of India, IMT filed a limited appearance restricted to its effort to vacate the attachment, and moved by way of an order to show cause why, under Admiralty Rule E, the attachment should not be vacated. Americas Bulk opposed. For the reasons discussed later in this Opinion, I grant IMT's motion and vacate the attachment.

### B. Eitzen Bulk A/S v. Ashapura Minechem Ltd.

Pursuant to a contract of affreightment between Plaintiff Eitzen Bulk and Defendant Ashapura Minechem,[1] Ashapura agreed to ship cargoes of bauxite in bulk from India to China over a period of three years. Ashapura completed the first two shipments, but then refused to complete any additional shipments, in breach of the contract.

The parties agreed that "[a]ny dispute arising under [the contract would] be settled and referred to Arbitration in London." Contract of Affreightment, Cl. 28 (Jan. 18, 2008). Prior to commencing arbitration, Eitzen Bulk obtained a Rule B writ of attachment from this Court in aid of the arbitration and, by October 2008, attached five EFTs totaling approximately $1.6 million. Over the next several months, Eitzen Bulk attached eight additional EFTs, bringing the total amount attached to $1,783,617.32. The garnishee banks transferred the funds captured by

---

[1] A contract of affreightment is "the contracting of a ship to carry cargo." Black's Law Dictionary 65 (8th ed. 2004).

3

the levies to their respective suspense accounts, where they are held subject to further orders from this Court.

In November 2008, Eitzen Bulk made demand for arbitration pursuant to the contract and served it on Ashapura, but Ashapura ignored the arbitration demand, and ensuing orders of the arbitrator and of the English courts. Eitzen Bulk proceeded with the arbitration, proved its case to the satisfaction of the arbitrator, and obtained an award in the amount of $36,306,104, and an additional $300,665.74 in interest, costs, and fees, for a total of $36,606,769.74. Eitzen Bulk then moved in this Court to confirm the arbitral award and related orders, and to obtain judgment. Order, Eitzen Bulk A/S v. Ashapura Minechem Ltd., 08 Civ. 8319 (AKH) (S.D.N.Y. July 14, 2009) (Doc. No. 28); Order, Eitzen Bulk A/S v. Ashapura Minechem Ltd., 08 Civ. 8319 (AKH) (S.D.N.Y. July 24, 2009) (Doc. No. 32); Judgment, Eitzen Bulk A/S v. Ashapura Minechem Ltd., 08 Civ. 8319 (AKH), (S.D.N.Y. July 24, 2009) (Doc. No. 33).

After Eitzen Bulk moved to confirm the English arbitral award, Ashapura, through its lawyer in India, sent a spate of emails, telegrams and letters to the Court discussing its view of the merits and opposing entry of judgment confirming Eitzen Bulk's arbitral award. The letters mentioned proceedings in India brought by Ashapura to void the English judgment, and also complained of improper service. On July 24, 2009, after considering Eitzen Bulk's motion and Ashapura's submissions, I found Ashapura's complaints about improper service to be unfounded and the proofs showing personal service at Ashapura's Mumbai offices to be adequate. Order, Eitzen Bulk A/S v. Ashapura Minechem Ltd., 08 Civ. 8319 (AKH) (S.D.N.Y. July 24, 2009) (Doc. No. 32) (citing Fed. R. Civ. P. Supp. R. B(2)(a); Fed. R. Civ. P. 4). I also found that, as of July 24, 2009, the Indian court, to which Ashapura's counsel referred, had not

4

entered an order with respect to the enforceability of the English arbitral award.  Id. (citing 9 U.S.C. § 207).  I entered judgment for Eitzen Bulk in the amount of the English arbitral award and cost orders, interest, and fees, totaling $39,208,936.16, and ordered the garnishee banks to turn over the attached funds.  Id.

Pursuant to my Order, the garnishee banks turned over funds that were held in favor of Eitzen Bulk.  However, in four separate actions in this District, three creditors of Ashapura asserted their claims to the funds attached by Eitzen Bulk.  Armada (Singapore) Pte Ltd. v. Ashapura Minechem Ltd., 08 Civ. 8257 (PKC); Armada (Singapore) Pte Ltd. v. Ashapura Minechem Ltd., 08 Civ. 8258 (CM); IHX (UK) Ltd. v. Ashapura Minechem Ltd., 08 Civ. 9436 (SAS); International Shipping & Logistics FZE v. Bombay Mineral Ltd., 09 Civ. 482 (GEL).  The garnishee banks refused to release any funds subject to multiple orders of attachment and claims.  Eitzen Bulk subsequently commenced an interpleader action to determine the priority of claims to the attached funds.  Eitzen Bulk A/S v. Armada (Singapore) Pte. Ltd., 09 Civ. 7612 (AKH).

Since the interpleader was commenced, claims asserted by two of the creditors, IHX (UK) Ltd. and International Shipping & Logistics FZE, became moot because their underlying attachment actions against Ashapura have either been vacated or voluntarily dismissed.  IHK (UK) Ltd. v. Ashapura Minechem Ltd., No. 08 Civ. 9436 (SAS), 2009 U.S. Dist. LEXIS 118582 (S.D.N.Y. Dec. 18, 2009); Notice of Dismissal, International Shipping & Logistics FZE v. Bombay Mineral Ltd., 09 Civ. 482 (GEL) (S.D.N.Y. Sept. 11, 2009) (Doc. No. 5).  The remaining creditor, Armada (Singapore) Pte. Ltd., filed for bankruptcy protection, subjecting the interpleader action to a bankruptcy stay.  Though Armada voluntarily released the attachment in one case, Armada (Singapore) Pte Ltd. v. Ashapura Minechem Ltd., 08 Civ. 8257

5

(PKC), the attachment in Armada (Singapore) Pte Ltd. v. Ashapura Minechem Ltd., 08 Civ. 8258 (CM), remains in effect.

On November 9, 2009, pursuant to Shipping Corp. of India, Ashapura filed a limited appearance and moved to vacate the attachments and for return of the funds it sent through this District. Eitzen Bulk opposed. For the reasons stated later in this Opinion, I hold in favor of Eitzen Bulk.

## II.     ELECTRONIC FUND TRANSFERS

Customarily, obligors and creditors in different countries transfer funds electronically, using their respective banks to exchange debits and credits through bank intermediaries. N.Y. U.C.C. § 4-A-104(1); 1 & 2 Donald I. Baker et al., The Law of Electronic Fund Transfer Systems, ¶ 11.01-11.05; ¶ 12.04[2][a]; ¶ 30.01[1]-[2] (2009); see also Shipping Corp. of India, 585 F.3d at 60 n.1. If the medium of payment is expressed in dollars, payments clear through a federal reserve bank in New York. Banque Worms v. BankAmerica Int'l, 77 N.Y.2d 362, 369-70 (1991). Payments expressed in the currencies of other nations clear through banks in those nations—London for pounds sterling, Frankfurt for Eurodollars, Tokyo for Yen, etc. In whatever system, the bank originating an EFT transmits an instruction to the computer system of the clearing bank, directly or through an intermediary bank, instructing that payment be made to an account at a beneficiary bank. The clearing bank accepts the instruction, creates a record of the transaction, and debits the account of the instructing (paying) bank and credits the account of the beneficiary (payee) bank. Manufacturas International, Ltd. v. Manufacturers Hanover Trust Co., 792 F. Supp. 180, 187 (E.D.N.Y. 1992). All of this occurs in an electronic instant, without the need for physical transfer of any objects or funds. See id.; N.Y. U.C.C. § 4-A-403 & cmts. 1-2; 2 Baker et al., The Law of Electronic Fund Transfer Systems, ¶ 30.02[1].

Orders of attachment interrupt this electronic flow. Until Shipping Corp. of India overruled Winter Storm, a creditor could attach the interest of the originator of an EFT before the clearing bank accepted it for onward transfer, or the interest of the beneficiary of an EFT after such acceptance, pending the outcome of a lawsuit or arbitration. Navalmar (U.K.) Ltd. v. Welspun Gujarat Stahl Rohren Ltd., 485 F. Supp. 2d 399, 407 (2007) (citing Winter Storm Shipping, Ltd., 310 F.3d at 278).

### III.  THE ADMIRALTY RULES OF ATTACHMENT

Article III of the Constitution, in extending federal jurisdiction "to all cases of admiralty and maritime jurisdiction," gives district courts the inherent power to grant maritime attachments. U.S. Const. art. III, § 2. Admiralty courts have issued maritime attachments "as far back as the authentic history of those tribunals can be traced." Atkins v. The Disintegrating Co., 85 U.S. (18 Wall.) 272, 303 (1874). Attachments secure a defendant's appearance and ensure at least partial recovery if the plaintiff succeeds in the action or related arbitration. Swift & Co. Packers v. Compania Colombiana del Caribe, S.A., 339 U.S. 684, 693 (1950) (citing Manro v. Almeida, 23 U.S. (10 Wheat.) 473, 489 (1825)). The need for maritime attachments is particularly strong because it is often "more difficult to find property of parties to a maritime dispute than of parties to a traditional civil action. Maritime parties are peripatetic, and their assets often transitory." Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., 460 F.3d 434, 443 (2d Cir. 2006); see In re Louisville Underwriters, 134 U.S. 488, 493 (1890). The Admiralty Rules respond to these issues by providing a broad attachment rule, "under which the attachment is quite easily obtained." Aqua Stoli Shipping Ltd., 460 F.3d at 443 (since maritime law deals with transitory items, "the traditional policy underlying maritime attachment has been to permit the attachments of assets wherever they can be found and not to require the plaintiff to scour the

globe to find a proper forum for suit or property of the defendant sufficient to satisfy a judgment" ).

Attachment procedures are codified in the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions of the Federal Rules of Civil Procedure. Under Admiralty Rule B, when a defendant cannot be found in the district in which a complaint is filed, plaintiffs may "attach the defendant's . . . intangible personal property . . . in the hands of garnishees." Fed. R. Civ. P. Supp. R. B(1)(A). If intangible property is to be attached, the process server "shall execute the process by leaving with the garnishee or other obligor a copy of the complaint and process requiring the garnishee or other obligor to answer as provided in [the Admiralty Rules]." Id. R. B(1)(d).

Admiralty Rule E codifies procedures to vacate attachments. Rule E(4)(f) requires the court to give defendants a "prompt hearing," and places the burden to justify the attachment on the party that procured it. Plaintiffs must "show why the arrest or attachment should not be vacated." Id.

Defendants in the instant actions, Ashapura and IMT, move under Admiralty Rule E to vacate the attachments. Citing Shipping Corp. of India and Hawknet, Defendants argue that this Court lacked jurisdiction to authorize levies on EFTs being processed for clearance in New York banks and, lacking *quasi in rem* jurisdiction, the funds being held by the banks resulting from the attachment must be returned to the banks and parties originating the EFTs, regardless of the merits and regardless of prejudice and hardship.

I hold in this Opinion that the issue is neither simple nor absolute. Once a court's jurisdiction has been asserted, rightly or wrongly, another act of jurisdiction may be required to deal with what the court has done. An admiralty court is a court of equity, as I discuss later in

this Opinion, and equity and justice should therefore be given due consideration even when undoing an act that should not have occurred. Once funds or some other *res* comes into the court's jurisdiction, regardless how the funds arrived, the question of who gets them is a question within the court's equity jurisdiction, and the question of how they came into the Court's jurisdiction is one of several considerations that should be evaluated.

## IV. DISCUSSION

### A. The Shipping Corp. of India and Hawknet Decisions

The dispute in Shipping Corp. of India arose from the charter of a ship by an Indian corporation to a Singapore corporation, for shipment of iron ore from India to China. As the ship began to load its cargo, one of its cranes collapsed, killing the crane operator and causing defendant to suspend the charter. Eventually, the ship's equipment passed inspection, the suspension was ended, and the shipment of iron ore was completed. However, the defendant refused to pay the ship owner's bill, leading to an order for attachment from this court in aid of arbitration in London under the charter agreement. Levies pursuant to the order for attachment captured $4,689,247 in EFTs, mostly intended for Shipping Corp. of India. The sum was deposited in the court's registry, subject to the court's further orders. Shipping Corp. of India v. Jaldhi Overseas Pte. Ltd., 08 Civ. 4328 (JSR) (S.D.N.Y. Oct. 14 2008) (Doc. No. 23).

The court of appeals, overruling Winter Storm, expressed concern that its prior holding in Winter Storm, authorizing attachments of EFTs transmitted to and from New York clearing banks, had introduced "uncertainty" in transferring funds internationally, "undermined the efficiency of New York's international funds transfer business," "discourage[d] dollar-denominated transactions," and "damage[d] New York's standing as an international financial center." Shipping Corp. of India, 585 F.3d at 62. The court commented that on "further

9

consideration," Winter Storm's justifications were "unpersuasive"; its reliance on precedents dealing with forfeiture of funds being laundered or transferred by terrorists were "misplaced"; and its consequences were "untenable." Id at 68.

In the absence of any federal maritime law governing attachments of EFTs, the court of appeals looked to New York law for guidance. New York law, the court of appeals found, permits attachments and injunctions to restrain "the beneficiary's bank from releasing funds to the beneficiary," and to "levy on the account of the originator in the originator's bank before the funds transfer is initiated," N.Y. U.C.C. §4-A-503, but not of EFTs in the possession of an intermediary bank. Shipping Corp. of India, 585 F.3d at 70-71. The Court held that EFTs in the temporary possession of an intermediary bank, under New York law, are not the "property of either the originator or the beneficiary," and thus cannot be the object of a Rule B attachment. Id. at 71. And since the entire concept of *quasi in rem* jurisdiction depends on property of a defendant being found and attached, an EFT that passes through New York for the instant of a set of electronic debits and credits cannot be the basis on which *quasi in rem* jurisdiction can be founded.

Thus, the court of appeals over-ruled Winter Storm, and Shipping Corp. of India became the rule of decision in the Second Circuit. The court of appeals ruled that its new holding applied to all cases "open on direct review," for a "presumption of retroactivity" obtained, overcoming "reliance interest[s]" to the contrary. Hawknet Ltd. v. Overseas Shipping Agencies, 590 F.3d 87, 91 & n.7 (2d Cir. 2009) (citing Harper v. Virginia Department of Taxation, 509 U.S. 86, 97 (1993)).

In Harper, the Supreme Court held that when it decides a rule of federal law, "that rule is the controlling interpretation of federal law and must be given full retroactive effect in all

10

cases still open on direct review and as to all events, regardless of whether such events predate or postdate [the] announcement of the rule." 509 U.S. at 97. This rule prohibits the "erection of selective temporal barriers to the application of federal law in non-criminal cases." Id. The Supreme Court explained that it could not allow "the substantive law to shift and spring according to the particular equities of individual parties' claims of actual reliance on an old rule and of harm from a retroactive application of the new rule." Id. The decision was predicated on the principle that similarly situated litigants should be treated similarly. Id.

Two years later, in Reynoldsville Casket Co. v. Hyde, the Court revisited the retroactivity issue and affirmed Harper's approach. 514 U.S. 749 (1995). However, Justice Kennedy, in concurrence, joined by Justice O'Connor, opined that in Harper the Court had not "surrender[ed] . . . [its] authority to decide that in some exceptional cases, courts may shape relief in light of disruption of important reliance interests or the unfairness caused by unexpected judicial decisions." Id. at 761. The Second Circuit has endorsed Justice Kennedy's approach, albeit in *dicta*. Margo v. Weiss, 213 F.3d 55, 60 n.2 (2d Cir. 2000) (citing Reynoldsville Casket Co., 514 U.S. at 761-62 (Kennedy, J., concurring); Harper, 509 U.S. 86 at 110-12 (Kennedy, J., concurring)); Vaicaitiene v. Partners in Care, Inc., No. 04 Civ. 9125, 2005 U.S. Dist. LEXIS 13490, at *21-22 (S.D.N.Y. July 6, 2006) (quoting Margo, 213 F.3d at 60 n.2); see also Hawknet Ltd., 590 F.3d at 91 & n.7 (noting that Harper presents a "presumption," rather than an absolute rule, of retroactivity).

The cases at bar involve actual funds, held in suspense accounts, not EFTs. The funds may have originated as EFTs, but they no longer are EFTs.[2] The intermediary banks hold

---

[2] Attached funds can be held in a variety of forms. In the cases at bar, the funds are held in a typical suspense account. In other instances, parties voluntarily posted surety bonds to release the attached funds. In other cases, funds were deposited in the court registry. In one such case,

11

these funds subject to court order and now a choice must be made.  The funds must either be sent back to the originating bank or its customer, or to the beneficiary to whom the EFT was once intended, or to some other party claiming a superior interest, for example, an assignee.  And if a choice must be made, should it be informed by equitable considerations, or should the Court indulge in the fiction that since it lacked jurisdiction to begin with, it should now be blind to what is right and just?  To take one of the cases *sub judice*, what should be the Court's attitude to Ashapura's demand that funds should be returned to it to further its stratagem of lawless behavior, disobeying and evading judgments and arbitral awards?  Ashapura's creditors, one with a judgment in hand, have made demand for the funds by invoking the laws normally enforced by this Court, and stand ready to show their respective entitlements in an interpleader action pursuant Rule 22(a)(1) of the Federal Rules of Civil Procedure.

Shall the runaway debtor be favored over these creditors?

### B. The Issue of Ownership

Under New York law, an EFT fails when it does not make its way to the beneficiary bank for credit to the beneficiary as provided in the payment orders.  See N.Y. U.C.C. § 4-A-104(1), § 4-A-210, § 4-A-406.  Upon such failure, electronic transferring of credits and debits cease, the EFT instruction is converted into a specific fund, and the funds are frozen at the intermediary bank in the form of a suspense account, a temporary account established to hold funds pending clarification of what should be done to them.  See § 4-A-502; John Downes & Jordan Elliot Goodman, Dictionary of Finance and Investment Terms 699 (2d ed. 2006); Joel G. Siegel & Jae K. Shim, Dictionary of Accounting Terms 430 (3d ed. 2000).  There, competing

---

the district court denied the debtor's motion to return these funds to the originating bank while arbitration proceedings remained pending.  Central Shipping Co. Ltd. v. Internaut Shipping Ltd., 09 Civ. 6222 (VM) (S.D.N.Y. Nov. 25, 2009) (Doc. No. 21).

claims of ownership to the funds can be evaluated, and the funds can either be returned, or paid, or held subject to judicial determination of rightful ownership.

In the cases before me, there are conflicting claims of ownership. Although, according to Shipping Corp. of India and Hawknet, I lacked jurisdiction to order the funds attached, they nevertheless were attached and plainly I have jurisdiction to order their disposition. The assertion of a claim to them is an assertion of a property right, and I must decide between such claims.

The precise contours of "[o]wnership [have] consistently defied easy definition." Commander Oil Corp. v. Barlo Equipment Corp., 215 F.3d 321, 329 (2d Cir. N.Y. 2000). At a minimum, we know that ownership is "relational." Id. (citing Restatement (First) of Property 1 (1936). "Ownership" consists of a bundle of rights among jural persons defining their legal relationships with respect to a specific object. See id. Ownership entails "the right to possess, the right to use, the right to manage, the right to the income of the thing, the right to the capital, the right to security, the rights or incidents of transmissibility and absence of term, the prohibition of harmful use, liability to execution, and the incident of residuarity. Burns v. Pennsylvania Department of Corrections, 544 F.3d 279, 287 (3d Cir. 2008) (quoting A.M. Honore, Ownership, in Oxford Essays in Jurisprudence 112-13 (A.G. Guest, ed. 1961)). Ownership is "nuanced" and relational, not absolute and indivisible. Black's Law Dictionary 1138 (8th ed. 2004).

Funds in a suspense account are, like any other species of property, subject to ownership claims. In Americas Bulk, the claims are between the originator of the funds and a putative creditor of the originator. The latter's claim is contingent, depending on the outcome of a pending arbitration between the parties. In Eitzen Bulk, the claims are between the putative

13

beneficiary of EFT transfers and of its judgment creditor seeking to impress the lien of a judgment creditor, and contesting with another creditor. In both cases, the Court must decide what should be done with the funds. That the Court initially lacked jurisdiction to order the funds attached is but one of a number of considerations.

I suppose that the retroactivity of Shipping Corp. of India, as decreed by Hawknet to apply to all cases pending before the courts of the Second Circuit, assumes that funds in suspense accounts arose from invalid attachments and may imply that they should be returned. But neither Shipping Corp. of India nor Hawknet addressed the issues that now are before me. Specifically, neither case confronted issues arising from an evasive judgment debtor or multiple claims of creditors, including a judgment creditor. Rule B attachments were intended to reach the property rights of a ship here today and gone tomorrow. Aqua Stoli Shipping Ltd., 460 F.3d at 443. Shipping Corp. of India ruled that that proposition cannot be applied to an intermediary bank's marking of debits and credits to an electronic flow of funds passing through it. 585 F.3d at 70. But Shipping Corp. of India did not rule on stationary funds in a bank suspense account, nor the injustice of favoring the originator, or a putative beneficiary, over a judgment creditor having to chase the debtor around the world, or a district court's power to do equity in disposing of the attached funds.

### C. The Court's Equity Powers

As a court in admiralty, I am guided by principles of equity, traceable to the English Court of Chancery. Vaughan v. Atkinson, 369 U.S. 527, 530 (1962) (citing Swift & Co. v. Compania Caribe, 339 U.S. 684, 691-92 (1950)); Clipper Shipping Lines Ltd. v. Global Transporte Oceanico S.A., 06 Civ. 15299 (PKL), 2007 U.S. Dist. LEXIS 18827, at *5 (S.D.N.Y. Feb. 26, 2007). The distinction between law and equity is rooted in the Constitution, and is not

affected by the fusion of law and equity accomplished by the Federal Rules of Civil Procedure. See U.S. Const. art. III § 2; Stainback v. Mo Hock Ke Lok Po, 336 U.S. 368, 382 n.26 (1949); Lane v. Ludlow, 14 F. Cas. 1081, 1082 & n.1 (2d Cir. 1800) (No. 8,052). Sitting in equity, a court can tailor remedies in accordance with practicality and in the interest of justice. See Freeman v. Pitts, 503 U.S. 467, 487 (1992) ("The essence of a court's equity power lies in its inherent capacity to adjust remedies in a feasible and practical way . . . ."); Hecht Co. v. Bowles, 321 U.S. 321, 329-30 (1944) (recognizing court's authority to "mould each decree to the necessities of the particular case"); Greenwich Marine, Inc. v. S.S. Alexandria, 339 F.2d 901, 905 (2d Cir. 1965) (recognizing court's authority to "adapt an admiralty rule to the equities of a particular situation"); 1 Dan B. Dobbs, Law of Remedies 55-56 (2d ed. 1993). Fundamentally, "the objective [of admiralty law] is to do substantial justice between the parties." Esso Standard (Switzerland) v. The Arosa Sun, 184 F. Supp. 124, 127-28 (S.D.N.Y. 1960); Erastus C. Benedict, The American Admiralty: Its Jurisdiction and Practice § 358 (Lawbook Exchange Ltd. 2002) (1850) ("The grand object of doing justice between the parties is superior to technical rules and forms . . . .").

An admiralty court need not turn a blind eye to the facts of the cases before it. Shipping Corp. of India held an EFT that passes through an intermediary bank in this district does not present an incident of property to attach, but the suspense account created by the intermediary bank is as much a *res* as any other *res*. More to the point, I am not deciding whether or not to attach the funds; I am called on to decide how the funds in suspense should be distributed.

Eitzen Bulk took steps to enforce its rights under the contract with Ashapura by initiating London arbitration. Rather than engage in arbitration as the contract required, or

comply with orders from the English High Court, or make an appearance (other than a restricted appearance to vacate the attachment) in this Court, Ashapura has, at every turn, engaged in a course of conduct designed to evade debts owing to Eitzen Bulk and others.  Eitzen Bulk, having obtained a $36 million arbitration award and a judgment in its favor, has attached funds totaling less than $2 million.  By upholding the attachment, I am exercising the Court's equity powers to ensure "substantial justice between the parties." Esso Standard, 184 F. Supp. at 127-28.

## V.     CONCLUSION

In Americas Bulk Transport Ltd. v. IMT Shipping & Chartering GmbH, Defendant IMT instituted arbitration in London soon after the attachment in this district was effected. They continue to engage in the arbitration and, from their reports, are engaged in discovery proceedings ordered by the abritrators.  There is no reason to believe that the London proceedings are dependent on the attachment, and there has been no showing that an arbitral award in favor of Americas Bulk would not be paid by IMT.  No reason of equity has been shown to depart from the rule prevailing generally in American courts that plaintiffs must await the outcome of a litigation or arbitration before they can require a defendant to give security for unproved claims.

Eitzen Bulk A/S v. Ashapura Minechem Ltd. presents a different story.  Eitzen Bulk is a judgment creditor, having obtained an arbitration award pursuant to its contract, and judgments of the English High Court and of this Court.  It seeks to impress its liens as a judgment creditor over the funds that Ashapura demands.  All contingencies of Eitzen Bulk's claim have been removed, except for payment, and there is an interpleader in this Court to determine the priority of competing claims to the attachment.  Indeed, the bank has been discharged of all further obligation.  Furthermore, the case presents a history of Ashapura's

active resistance and evasion of payment, played over a world-wide canvas. The merits, and the equities, strongly favor Eitzen Bulk. Ashapura's motion to vacate is denied.

In <u>Americas Bulk Transport Ltd. v. IMT</u>, 08 Civ. 6970 (AKH), the order of attachment, issued on August 6, 2008, is hereby vacated.

In <u>Eitzen Bulk A/S v. Ashapura Minechem Ltd.</u>, 08 Civ. 8319 (AKH), the motion to vacate the attachment is denied.

The Clerk shall mark the motion (Doc. No. 37) as terminated.

SO ORDERED.

Dated:   March 18, 2010
         New York, New York

ALVIN K. HELLERSTEIN
United States District Judge